Staples, J.
This is an action of trespass on the case for damage to the plaintiff’s land. The declaration charges the defendant with erecting an embankment and other structures across the lands of the plaintiff,, without leaving sufficient arches or waterway to allow' *359 the flood waters of Buffalo run to escape as they had heen accustomed; and in consequence thereof the flood waters of said run became accumulated in great quantity upon the low lands of the plaintiff, injuring the same, and rendering them permanently unfit for cultivation.
The defendant pleaded not guilty; upon which issue was joined. He also filed a special plea alleging, in substance, that the commissioners, duly appointed, had awarded the tenant of the freehold, under whom plaintiff claimed, the sum of $1,362, as a just compensation for the land taken by the company, and for the damage to the residue of the tract; that the sum so awarded had heen duly paid by the defendant to said tenant of the'freehold, and the report of the commissioners confirmed by the proper court.
To this plea the plaintiff put in a special replication, averring that the damages to the lands of the plaintiff, set forth in the declaration, resulted from a negligent and improper construction of the defendant’s works, and were not assessed or ascertained by said commissioners ; concluding to the country.
To this replication there was no rejoinder. The record states that the jury “returned into court, and upon their oaths rendered a verdict 1 upon the issues joined’ for the plaintiff.”
It is now insisted that, though a misjoining of issue is cured by the statute of jeofails, yet that act will not sustain a verdict where no issue has heen in fact joined; and in this case the special replication, containing new matter, there can he no issue thereon without a rejoinder; and this objection is not obviated by the statement in the record that the jury were sworn to try or rendered their verdict upon the issues joined. It must he admitted the cases cited by appellant’s counsel strongly sustain this view. The case of Moore v. Mauro, 4 Rand. 488, is, however, a later decision than either of *360 those cited, and maintains a contrary doctrine. There defendant jileaded that the action was founded on an account of goods, wares and merchandise; and that cause action did not accrue within one year. The plaintiff replied that the plaintiff and defendant were merchants, and goods were sold and delivered by7 plaintiff as a merchant, and so purchased and received by the defendant; concluding with a verification.
There was no rejoinder to this replication, but the record stated “that issue was thereupon joined.”
It was objected that there was no issue; but the court held this was a misjoining of issue which was cured by the statute of jeofails. It does not appear from the report of the case, that the previous decisions were cited, or in any manner alluded to, either in the argument or the opinion of the court. This is the more remarkable, as the cases are in direct conflict, unless, as has been suggested, the statement in the record in Moore v. Mauro, “that issue was joined on the replication,” distinguishes that case from Wilkinson’s Adm’rs v. Bennett, 3 Munf. 314; where the record states “the jury were sworn upon the issue joined.” This is certainly a very narrow and unsatisfactory ground upon which to adjudicate the rights of parties. Besides, in Stevens v. Thornton’s Adm’r, 1 Wash. 194, an entry upon the record after the replication filed, “ that issue was thereupon joined,” was held to be insufficient when it appeared there was no issue.
The decision in Moore v. Mauro, would seem to be more in harmony with the spirit of the modern cases, and the disposition manifested by the courts to disregard mere technical objections, unless there be omitted something so essential to the action or defence that judgment according to law, and the very right of the cause, cannot be given; more especially where the parties, as in this case, have gone to trial upon the merits, submitting the cause to the jury as though the issues *361 liad heen more formally joined. The certificate of the .judge presiding at the trial, shews that the subject matter of the plea and replication was fully investigated, was the point to which the evidence of both plaintiff and defendant was principally directed, and must have been passed upon by the jury.
Do objection for the nonjoinder of issue was made, either before or after the rendition of the verdict. 'The cause was tried in August, 1859; a motion made by the defendant for a new trial and overruled; and a writ of error and supersedeas from this court obtained in that year. During all this time this objection has never been made; and now, after the lapse of nearly twelve years, we are asked by the defendant to reverse the judgment for a defect in the pleadings directly attributable to its own negligence. The effect of sustaining such an objection now would be the sacrifice of the justice of a cause upon a mere technicality in no way affecting the merits, and to hold out to parties inducements to omit some purely formal proceeding ■easily overlooked in the hurry and confusion of a trial, with a view to a reversal of an unfavorable verdict.
Under these circumstances, I think this court, in this ease, should follow the rule announced in Moore v. Mauro, if there was no other ground upon which its decision might be based. But the question here may Be settled without reference to the precise point involved in the previous decisions.
It is a rule of pleading, that whenever the replication contains new matter it should conclude with a verification, to afford the opposite party an opportunity of answering it. Iu such case there will not be an issue until the defendant adds the rejoinder. But when the replication properly concludes to the country, the making up the issue by adding the similiter, is mere mattér of form. This may be done by the clerk; but *362 the failure to do so is not ground of error. The rule Just stated is subject to this qualification, that although the replication may contain new matter, yet if the defendant cannot take any new or other issue in his rejoinder without a departure from his plea, the replication may, notwithstanding the new matter, conclude-to the country. 1 Saunders R. 103 a.; Carthrae v. Clarke, 5 Leigh 268.
The defendant pleaded that compensation had been made the tenant of the freehold for the land taken, and for the damage to the residue of the tract. The plaintiff replied that in consequence of the negligent construction of the work, the damages sued for were not assessed nor foreseen by the commissioners.
Suppose the defendant had rejoined, what new issue could he have taken, or what new matter averred* without a departure from his plea? He could only have rejoined that the work was properly constructed* and the damages were foreseen and assessed by the commissioners. And thus the parties would have been formally and technically at issue on the precise ground with respect to their pleadings, they in fact occupied on the trial.
The same defect occurred in the pleadings in the-first case tried, in which there was a verdict against the plaintiff, and upon which the defendant is now relying as an estoppel.
It is not improbable that the counsel, in both cases* for plaintiff and defendant, considered the replication as substantially a denial of the plea, upon which the issue might at once be tendered, and to which the defendant could make no answer, other than that contained in the plea.
If these views be correct, an issue was properly tendered by the replication, and the failure of the defendant to join therein is cured by the statute.
The second'question to be considered is, whether the- *363 verdict in the first case tried presents a bar to a recovery in this suit. There can, of course, be no doubt that a verdict in one suit 'will be conclusive in every other between the same parties, where the cause of action is the same; upon the ground that what has once been judicially determined shall not again be made the subject of controversy. But it has been settled by numerous cases, that to make such verdict available as an estoppel, or conclusive as evidence, it must appear not only that the same matter was in controversy, but that it was actually decided; and that where the verdict of the jury may have been founded upon one of two points, it will not operate as an estoppel as to either. 2 Smith’s Leading Cases 374. Although the testimony may have been sufficient to establish a particular fact, and that fact may have been involved in one ®f the issues to be tried, yet if it be doubtful whether the verdict was based upon such fact, it will not operate as an estoppel.
Li Long v. Baugas, 2 Ired. R. 290, it was decided that a verdict, in an action of detinue against the plaintiff, on the plea of non deiinet, is not sufficient evidence in another suit to show that the plaintiff had no title to the property demanded. Judge Ruffin said the verdict might have proceeded on various grounds, suggested by him; that the plaintiff had no title, or that the defendants did not jointly detain' the property. It was impossible to tell on what ground the jury went, possibly upon either or all the grounds together. And if evidence were allowable, to show the grounds upon which the verdict was rendered, it was clear the evidence did not show that the verdict was given, necessarily, on the very fact that the plaintiff had no title.
According to the Lew York decisions, parol proof may be given to show the grounds upon which the verdict was rendered in the first action, where the record does not disclose them. But it is there held, also, it *364 will not be sufficient to show that the testimony established a particular fact; it must clearly appear that the verdict was based upon that fact. Jackson ex dem. v. Wood, 8 Wend. R. 27; Lawrence v. Hunt, 10 Wend. R. 80. In McDowell v. Langdon & als., 3 Gray’s R. 513, it was decided that a verdict for the defendant in an action at law for obstructing the flow of water to the plaintiff’s mill, on a plea of not guilty, and a specification of defence denying both plaintiff’s right and any injury thereof, are not a bar to another suit for the same' matter, unless it appear either by the verdict or extrinsic evidence, that the defendant prevailed because the jury found that the jflaintiffs had not the right which they claimed. Metcalf, J., said it was doubtful whether the defendants succeeded in the first action, on the ground that they had the right they claimed in their specification, or on the ground that they had done no acts in violation of the plaintiffs’ rights. And the parol evidence admitted showed only that the plaintiffs at the trial claimed an ancient right to a prior use of the water; and that evidence was introduced on both sides in regard to the rights of both parties. The plaintiffs may have failed in their action because they failed to satisfy the jury that the defendants had violated their rights, even though the plaintiffs had all the rights which they claimed. See also Lore v. Truman, 10 Ohio State R. 45.
In the case of The Wash., Alex. and Geo. Steam Packet Co. v. Sickles and Cook, 24 How. U. S. R. 333, the Supreme Court of the United States decided that the record of a former suit between the parties, in which the declaration consisted of a special count and the common money counts, and where there was a general verdict on the entire declaration, cannot be given in evidence as an estoppel in a second suit founded on the special count, for the verdict may have been rendered *365 on the common counts. Also, 2 Smith Leach Gas. 794, and cases there cited.
Let us see if these principles are not decisive of the question under consideration. The two actions were instituted against the defendant on the same day. The declarations in hoth cases were filed at the same time, and the same issues made up in both cases at the same term. The writ in the one case is for damage to the plaintiffs’ crops, in the other for damage to his land. The declarations follow the writs with great precision and care in each case. In that for the destruction of the crops, the declaration contains no allegation whatever of any injury to the land. That case was first tried, and the certificate of the judge, of the facts proved, shows that the attention of neither party was directed to the question of damage to the lands, nor was there a scintilla of evidence before the jury on that subject. The reason is obvious; at that time the other suit between the same parties, for the recovery of such damages, was pending in the same court, and must have been understood and tacitly agreed, as not a proper subject of investigation in the case then being tried. It may be that testimony ivas offered to show that defendant’s works were improperly constructed, but the record does not show the fact. The main purpose of the defence was to show that the flood which stvept away plaintiff’s crops Avas the heaifiest knoAvn in that section for twenty-five years, and that the crops of the plaintiff would have been utterly destroyed though the embankment had never been made. The judge certifies it was proved on the trial that at the time of the injury the plaintiff’s lands were not covered Avith Avater to a greater extent than they had frequently been before defendant’s works were constructed; and if these works had never been constructed at all, all the plaintiff’s crops would have been utterly destroyed. Surely the defendant could not be required to pay the plain *366 tiff for the loss of his crops, if it were clear they would have been destroyed with or without the embankment, although the jury might believe, from the evidence, work was defectively constructed. Ho one reading this record can fail to perceive that the verdict was given on this ground, and upon no other. If, however, upon the pleading and the evidence, it is merely doubtful upon what ground the jury rendered their verdict in the first action, such verdict will not operate as an estoppol, according to the authority of adjudicated cases.
It has been argued, and with much ingenuity and ability, that the averment of specific damage to the crops was not the gist of the first action, but only a consequence of the right of action; that flooding the ground of another is actionable in itself; that in such case the law will imply damage which need not be specially stated; that the plaintiff, though he might fail as to the crops, had the right in the first action to recover for injury to the land, and that the plea of not guilty put in issue both the act complained of, and all its consequences.
And so in detinue, the plea of non deiinet puts in issue the title of the plaintiff, as well as the act of detention. But in such case the verdict does not operate as an estoppel, unless the ground upon which it was rendered appear from the record or by extrinsic evidence.
In Thorpe v. Cooper, 15 Eng. C. L. R. 387, it was said that, although a declaration contains counts under which the plaintiff’s whole demand might be recovered, yet, if no attempt'be made to give evidence of some of the claims, they may be recovered in another action. This proposition is sustained by numerous authorities. Hadley v. Green, 2 Tyrwhitt’s R. 390; Seddon v. Tutop, 6 T. R. 607; Wheeler v. Van Houten, 12 Johns. R. 311; and Irwin v. Knox, 10 Johns. R. 313. It is equally well settled that, whenever a question arises as to the identity of the matter litigated in the first suit, parol *367 evidence may be received of what transpired on the first trial, with a view to ascertain what was the matter •decided upon by the jury.
The rule is thus laid down in 1 StarMe Evi. p. 263. A recovery in one action cannot be pleaded in bar of a second, where in trial of the first action no evidence was given in support of the claim on which the second is founded. Where issue is taken on the fact whether the second action is brought for the same cause as the first, evidence is admissible of what passed at the first trial. See, also, Whittemore v. Whittemore, 2 New Hamp. R. 26; 2 Phillipps on Evidence, new ed. 18.
It may be argued, however, that this rule only applies where the causes of action are distinct and sever-able, and the plaintiff is at liberty to enforce them in ■one or several suits.
The rule undoubtedly is, that where a wrong or a ■contract is entire, and might be the subject of a single suit, the law will not permit it to be divided and made the subject of several suits. In such case, if there is a judgment for or against the plaintiff for part, the residue will be as absolutely extinguished as if the whole demand had been embraced in the first suit. The difficulty is not in the rule, but in discriminating between causes of action that are entire, and such as are separate and distinct.
Where the act is unlawful in itself, a right of action accrues immediately, and is held to include all subsequent damage flowing from it. In such cases there can be but one recovery between the parties, as the injury is not the cause of action.
Where, however, the act is lawful in itself, but negligently and improperly performed, the gist of the action is the damage, without which there can he no recovery. And I can see no good reason in such case why the plaintiff may not institute separate suits for distinct injuries, occurring at different times, to differ *368 ent parcels of property, though resulting from one and the same act of negligence.
The case of Young v. Munby, 4 Maule & Selw. R. 184, substantially affirms this principle. The plaintiff declared against the defendant, the executor of the ° former rector of the rectory of Grilling, for the failure of such rector to repair the chancel and pew of the church, as it was his duty to do. The defendant’s plea was, that the plaintiff had impleaded the defendant in a former action for want of reparation of the rectory house, out-houses and cottages belonging to the rectory, and recovered a verdict; and that the same state of ruin and decay of the chancel and pew existed before and at the time of the commencement of the former action, and might have been included in the former suit.
It was argued by Tindal, that the plaintiff is not at liberty to subdivide one entire cause of action, and to bring so many separate suits as there may be consequences resulting from it; but that he is bound to include all the consequences under one action, and to recover damages for them once for all. Lord Ellen-borough said there was no doubt in the case. If the defendant could make out that an injury caused by dilapidations was one entire identical injury, forming precisely the same cause of action for any part of it, then he would be right that the plaintiff could have but one action for it. But there was no good reason why this should be considered as one entire cause of action, compounded of the several injuries sustained in the several parts. They are different and independent injuries in respect of the different parts, the injury from the dilapidation of the house is one thing, and for the dilapidation of the chancel is another; the causes are distinct; the latter might not be consummate when the first was.
Tn this case, conceding for a moment that the plain *369 tiff had the right to recover in the first suit for flooding his lands, still it is apparent he neither enforced nor attempted to enforce that claim. There was no allegation in the declaration of such damage, nor evidence offered on the trial hearing upon that question. Had he attempted it, it is not improbable the evidence would have been objected to on the ground of the pendency of another action for damage to the land.
In the first suit, the gravamen of complaint was, that by reason of defective arches and waterways, the plaintiff’s crops were destroyed by the flood of August, 1856.
In the present case, the evidence bearing upon the question of the damage to the land, and the causes to which it was attributable, was very conflicting; so much so, that the presiding judge refused to certify the facts. We must, therefore, look to the declaration to ascertain the grounds of the action, and as there was a verdict for the plaintiff, it is to be presumed he sustained these grounds at least to the satisfaction of the jury. The averment is, that, owing to insufficient arches or waterways constructed by the defendant, the waters of Buffalo run became accumulated upon the low lands of the plaintiff in the month of August, 1856, and at various other times since, a portion of the embankment washed down and was thrown into the stream, obstructing the channel, and causing a reflux of the waters upon the adjoining lands of the plaintiff, sobbing and permanently injuring the same. It is apparent from this statement that the causes of action are different for distinct injuries, occurring at different times. The plaintiff’s right of action for the destruction of the crops was complete upon the happening of that event. "Whether he could then have maintained a suit for the damage to the freehold, is very questionable. The extraordinary freshet which destroyed the crops, would also have flooded the lands, although the *370 defendant’s works bad never been constructed. Tbe exemption from liability was as complete in tbe one case as tbe other. The permanent injury to tbe freehold, of wbicb complaint only is made in this action, was sustained afterwards, was gradual in its character, and was tbe result of successive overflowings or accumulations of water upon plaintiff’s land, and wbicb could have been in a measure prevented by removing tbe obstructions and tbe construction of suitable arches and waterways. Tor the first injury, tbe loss of tbe crops, tbe plaintiff might have sued immediately. Tor tbe second, tbe damage to tbe freehold, be bad tbe right to bring a new action whenever tbe damage was sustained. Indeed, upon well settled principles, each overflowing of tbe plaintiff’s land was a continuation of tbe injury, for wbicb there might have been successive actions. Tbe fact that tbe plaintiff delayed his suit for tbe first injury until tbe occurrence of tbe damage in tbe second, it seems to me, imposes upon him no obligation to include both causes in tbe same action.
Before concluding this opinion, it is proper to notice a question wbicb has been raised as to tbe right of tbe plaintiff to maintain this action. At tbe time of tbe assessment of damages by tbe commissioners tbe land was held by tbe personal representative of Mrs. Judith Randolph, and to him tbe money was paid. A short time thereafter tbe land was sold under a decree of court and was purchased by tbe plaintiff. Whether tbe works of tbe company were then completed does not distinctly appear. If they were not, tbe purchaser could not know that these works would be constructed In a negligent and imperfect manner. If they were so completed, it has been suggested tbe purchaser must be apprized of tbe defective execution of tbe work, and as bis vendor received compensation for tbe land, and for damages to tbe residue of tbe tract,' be must *371 take the land cum onére; and further if the works ol the defendant were so defectively constructed, a cause of action at once accrued to Mrs. Randolph’s representative, but did not pass to the purchaser, and the plaintiff has, therefore, no right to maintain this action.
The principle of law is well settled, that wherever •any act injures another’s right, and would be evidence in future in favor of the wrong doer, an action may be maintained for the invasion of the right without proof •of any specific damage. The reason is said to be that the repetition of the act may, in the progress of time, impair or defeat the right, and were the owner required to wait for some appreciable injury before bringing his ■suit, he might lose the right without a remedy to preserve it. But this principle can have no application to :a case like the present. bTo right of the land owner was infringed by the construction of the company’s works. Upon the payment of the damages assessed by the commissioners, the title to the land taken for the railway immediately vested in the company in fee simple, and thereafter the relation sustained by the land owner and company to each other was simply that of vendor and purchaser. Being the owner of the land thus acquired, the company had complete dominion of the soil, and might place thereon such structures as it deemed proper in the prosecution of its work. Bor the exercise of this undoubted right it could not be ■accountable to any one unless for actual damage sustained thereby, however defective the work might be. 'The rule is tiras laid down in a leading case: “The right which a man has is to enjoy his own land in the state and condition in which nature has placed it, and also to use it in such manner as he thinks fit, subject always to this, that if this mode of using it does damage to his neighbor, he must make compensation.” The ground of complaint in such case, is not the doing .an unlawful act, but the doing an act, lawful in itself, *372 ill such a careless and negligent manner that consequential damage is caused to the contiguous land owner.
If this view be correct, the estate of Mrs. Randolph had no cause of action by reason of the defective construction of the company’s works, as thereby no right of said estate was invaded, and no damage to the land occurred until after it had passed into the possession, and became the properly of the plaintiff.
The company’s works may have been defectively constructed, but it did not necessarily follow that any injury to the land-owner would result from such construction. Whether it would or not would depend upon the violence or frequency of storms, the action of the weather, and other agencies, whose influences could neither be estimated nor foreseen. The damages in such cases would be purely speculative, and the result would be, that in many instances the company would be required to pay for injuries that would never occur, and in others escape the payment of damages which might be sustained long after the verdict was rendered.
If a right of action accrues so soon as the work is defectively done, this injustice would follow. If the land-owner fails to sue within five years thereafter, his action is barred, though his property should be rendered utterly valueless within the five years by a reflux of the water thereon occasioned by such defect.
In Bonomi v. Backhouse, 96 Eng. C. L. R. 622, the plaintiff was the owner, of the reversion of an ancient house, and brought his action, alleging that the defendant negligently and without leaving proper support, worked the mines under the contiguous land. Ro actual damage, had occurred until within six years, and it was claimed the action was barred. The court of Exchequer, reversing the Queen’s Bench, held that no cause of action accrued for the mere excavation by the defendant on his own land, so long as it caused no dam *373 age to the plaintiff’s. The judge said, if the cause of action arose when the act was done, without regard to the injury, the jury would have to decide upon the speculative question whether any damage is likely to arise; and it might well he, that in many cases the jury would give large sums of money for apprehended damage, which, in point of fact, might never occur, and in other cases, upon the evidence of mineral surveyors and engineers, find that no damage was likely to occur when the most serious injury might afterwards happen; and in such case no new action could he brought for any subsequent damage occurring, because if the original act was unlawful, all the damage consequent upon that unlawful act is satisfied by the first recovery. The authority of this case has been repeatedly recognized, and is generally regarded as sound law.
The injustice of a contrary rule is made manifest by a single illustration. A railway company having constructed a defective culvert or other structure, ascertains that the land of the adjoining proprietor will he flooded and injured, and immediately remedies the defect by a proper culvert, so that no damage to the land can ever occur. It seems to me that fact would he a conclusive answer to an action brought for the defective construction of the work in the first instance. The defendant might well say that the plaintiff had not ■only sustained no damage, but beyond all dispute never would sustain any damage. But if the cause of action arises by reason of the defect alone, the right having ■once vested could not be extinguished.
These considerations serve to show that, to maintain an action against a railway company for the erection of defective structures upon its own land, the plaintiff must aver and prove some special damage, and upon proof of that he is entitled to recover whenever his title may have been acquired.
The case of Lawrence v. The Great Northern Railway *374 Co., 4 Eng. Law and Eq. R. 265, is an authority directly in point. There the declaration averred that the defendants erected an embankment across certain low lan<^s> without leaving sufficient arches for the flood waters of the river Dun to escape, by means of which said waters became accumulated on plaintiff’s lands.
The defence was that before the plaintiff, who was-a mere tenant for years, became possessed of the land,, the defendant had paid to the owner, under whom plaintiff claimed, the amount awarded such owner, as a compensation for the land purchased and for all damage done or likely to he done to the remaining lands; and that before plaintiff became possessed of the close-the defendants constructed their arches and embankments in the mode and according to the specifications mentioned in the award. The plaintiff’s right to maintain the action was not denied. The only question considered was whether the compensation received by the owner embraced all possible and contingent damage arising from the construction of the work, although neither foreseen nor even guessed at by the arbitrator» The court held that the company might, by executing-their arches with proper caution, have avoided the injury which the plaintiffs sustained, and the want of such caution was sufficient to maintain the action.
In Pittsburg, Fort Wayne, and Chicago Railway v. Gilliland, 56 Penn St. R. 445, the same questions were presented and discussed as in the previous case.
This was also an action agáinst a railway company-for damages to the plaintiff’s premises, a tenant for-years, arising from the construction of an insufficient culvert, by means of which plaintiff’s lands were overflowed in time of heavy floods. It was insisted that the plaintiff’s remedy, if any he had, must be held to he included in the special remedy given for the appropriation of the land, under which the damages had been duly assessed, and paid to the tenant of the free *375 hold, long- anterior to the lease under which plaintiff claimed. But the court held that no estimate of damages could be founded upon an expectation that the ■ company will omit its duty, or on the supposition that it will so negligently and unskilfully construct its work as to produce injury; or whether it will fail at all is unknown and can furnish no guide to govern the estimate. If the culvert was so unskilftilly and negligently constructed as to be insufficient to resist the high water of the stream, the company building it would be liable to any party injured thereby. Hentz v. Long Island R. R. Co., 13 Barb. R. 646, is to the same effect. 11 Cush. R. 221.
All the authorities agree that the assessment of damages under the statutes applying to that subject, is only a bar to an action for such injuries as could properly have been included in such assessment. The commissioners have the right and are bound to presume the company will construct its works in a proper manner, and they have no right to award damages upon the supposition that the company will negligently and improperly perform its work. A failure to construct its works in a proper and skilfull manner will therefore impose a liability for damages to any one who may sustain any loss or injury by reason of such negligence; it being well settled that such damages are not to be considered as included in the estimate of the commissioners. In this case, whether the works of the company were or were not properly constructed was a question exclusively for the jury. Upon this point the evidence was so conflicting, the judge of the Circuit court refused to certify the facts. Upon well-settled principles, where the evidence is contradictory and a new trial is refused by the court which presided at the trial, its decision is not the subject of a writ of error or examination in an Appellate court.
*376 The judgment of the Circuit court must therefore be affirmed.
The other pies, J. judges concurred in the opinion of Staples, J.
Judgment Affirmed.